May it please the Court, Michael Quirk for Plaintiff Appellant Connie Nagrampa. With the Court's permission, I'd like to reserve five minutes of my time for rebuttal. This appeal raises two issues. The first question is whether, under the Federal Arbitration Act, a court or an arbitrator determines whether a contractual arbitration clause is unconscionable and therefore unenforceable. The second issue is whether the defendant's mandatory arbitrate – assuming a court decides, whether the defendant's mandatory arbitration clause in this case is in fact unconscionable. Since the panel's opinion turned primarily on the first question of who decides, I'll start with that issue. The panel's holding that Ms. Nagrampa must go to arbitration to find out whether the arbitration clause in this case is unconscionable was wrong for several reasons. First and most fundamentally, it's contrary to the Federal Arbitration Act and the United States Supreme Court's decision in PrimaPaint v. Flood & Conklin Manufacturing. Under PrimaPaint, when a court is faced with a contract law challenge, it's supposed to separate the arbitration clause out from the rest of the contract and treat it as though there are two contracts, a contract for arbitration and a contract for the underlying transaction. In addressing that issue, could you just bring it home to California law, which seems to, in the first part of a unconscionability analysis, assume that a contract of adhesion in order – is itself unconscionable procedurally, so that by asserting that there's a contract of adhesion, are you necessarily calling the entire agreement into – into question, which then would implicate PrimaPaint or argue? No, we're not, because the element – the procedural element of unconscionability is often, as it is here, satisfied by the fact that something is a contract of adhesion. Now, the allegation here is that the arbitration clause is itself adhesive, and it's descriptively true that the rest of the contract is as well. But what PrimaPaint says is that the Court considers issues relating to the making and performance of the agreement to arbitrate. To the extent that the arbitration clause is adhesive, that's an issue relating to the making of the arbitration clause, and that's what a court is supposed to decide. But if you – if you determine that the contract is adhesion, is adhesive, and California law deems that then to be unconscionable, at least procedurally, why aren't you calling into question the entirety of the contract? In other words, is it the situation that if it's an adhesive contract, it's per se unconscionable for all purposes, or is that just the first step? That's just the first step. And in fact, because there are other necessary steps for invalidating a provision as unconscionable, the only provision of the contract here that would be invalidated under our unconscionability argument is the arbitration clause, because the next step is the question of substantive unconscionability, which goes to oppressive or one-sided terms. Here, the allegations of substantive unconscionability concern the arbitration venue 3,000 miles away in Massachusetts, the arbitration costs, and the matter of selecting the arbitrator, all of which are specific and unique to the arbitration clause. Ginsburg. Did the district court below rule on whether or not the agreement, including the arbitration clause, was a contract of adhesion? The district court found that it was – that the question was not in dispute, that essentially the defendants didn't contest this question. But what did it rule? It jumped over it and jumped to substantive unconscionability. In fact, there is no – But was this required under California law and under Armendariz to have made that preliminary assessment whether or not the contract was one of adhesion? Well, I mean, because it turned its finding on a lack of substantive unconscionability, it found that it didn't have to reach. It essentially did the second step first and just reversed the order. So if we were to rule in your favor that it was a decision, that the decision as to the unconscionability of the arbitration clause belonged – correctly belonged in the district court, then we would simply affirm the district court under your analysis. Well, no, that's not correct, because we – the basis for appeal was our allegations that the arbitration clause is both procedurally and substantively unconscionable. The district court said that the clause is not substantively unconscionable. We disagree with that. That's why we brought the appeal. Assuming our substantive unconscionability argument is correct, a court has to engage the procedural unconscionability question. When it does, I think that the district court's finding that this issue is not in dispute. So on the merits, then, we would not have to remand. We would make a determination as to whether the arbitration clause was a substantively unconscionable de novo. That's correct. And, of course, if – I hear your argument, but what do we make of the fact that you waited for more than a year to raise this issue? You participated in the arbitration proceedings for quite some period of time. Well, the plaintiff participated in the arbitration proceedings basically because she was sued. She did not bring her claims when the arbitration began. The male coups brought an action against her to collect what it said was an $80,000 debt. And so she had to defend herself. Part of her defense in the arbitration – Well, she didn't have to defend herself. She could simply have taken the position that the arbitration clause is unenforceable and declined to participate. She could have gone into court and sought a declaration that the – so participating in the proceedings was not the only option open to her, which brings us back to that question. By failing to take those other options available to her and choosing instead to plunge into the substance of the arbitration, you know, I don't know whether Judge Thomas used the word waived, but I'll use it. He can amend my question. I just don't know whether he did or not. That's where I was going. I think that's where Judge Thomas was going. Why then hasn't she waived this claim by participating for a year in the very proceeding that she now claims is unlawful? The short answer is because the claims in this case – It's like the good answer. Well, it's both short and good. The short and good answer is that the claims in this case, her allegation that her suit against Malkoops was not the claim in arbitration. The claim that was in arbitration was Malkoops' claims against her. So, I mean, in that regard, what she did in arbitration is not inconsistent with trying to bring a court action here. Doesn't it still bear, though, on the issues that you're raising, for example, the inconvenient venue and cost, because she was able to participate in something far away and presumably expensive? She actually was not able to. She contested the venue and cost at every opportunity she had, and ultimately she had to give up. She couldn't pay the costs, and so what ended up happening was AAA entered judgment against her without her participation in the end. So she made these very challenges to the distant venue, to the costs. Did she file a statement of indigency that might have entitled her to a to a waiver of the fees? She submitted a request for a fee waiver to AAA. She attached to it. I know that, and they wrote back and they said that here's a form where you can claim your indigency or, you know, that you don't have the funds, and I'm just wondering did she at that point respond by filing that form? She didn't file the form, although she gave them all of the information that the form requested, and the case just went forward while this issue was pending. And ultimately, I mean, the case got decided. She wrote to them asking for a waiver. They write back to her and they say we have a form. I want you to fill out. She did write back after that, providing the information in substance, the information that was in the form. She gave the information in substance but not in form, and In response to the request for a form, she did give the information in substance. She, I'm not sure which came which. I believe she gave the information in substance before the request, but the information pertaining to her ability to pay. So she gives the information in substance. They say we need a form, and what she's saying to us is that she then didn't comply with that request. Now, and the case went on and was decided without her involvement in the end. But, I mean, She had paid a fee before that period of time? She paid a fee to AAA? My understanding is that she did not, because the claim in arbitration was Malkuth's claim. And when she was charged the fees, she was unable to pay, and that's when she gave AAA her statement of her inability to pay. But she never actually paid them. She got a bill. She got bills, and the bills are in the record, and they, I mean, that's the basis for the cost challenge here. Right. But she never paid and she disputed it. And so the arbitration essentially was resolved without her. But that was an arbitration of Malkuth's claims. This is the same. Since she had a procedure that the rules provide and she was given an opportunity to comply with that procedure to get a waiver of the fees, why hasn't she waived that argument? Because, I mean, it was For failure to at least follow the procedures. And if she gets a denial, then she gets a denial. But in this case, she was, according to what you've told us, she didn't. And she gave them all of the information that pertains to this, and AAA had all the information and didn't grant the waiver. She tried to give them the information to justify a fee waiver, and she didn't get it. But isn't all of that activity inconsistent with her position that the arbitration itself is unconscionable? Shouldn't the first thing that she should have done would have been to seek some sort of an injunction, a judicial action to prevent the arbitration from going forward? Instead, she participated in the arbitration for a year before raising the argument that you now pressed on appeal. She actually, while participating, she was raising these very arguments. From the beginning, she was contesting the venue. But she didn't raise the argument that I can't be forced to go to arbitration. That's the distinction. And the way to do it is to seek some sort of a judicial order in joining the arbitration from proceeding if she truly believed that the arbitration was unconscionable. Well, what she did was she tried to take on the unconscionable elements, the venue and the cost, and when she didn't succeed in arbitration, she went to court to get a court's relief. Well, that's one way to look at it. The other way would be that she waited to see how the arbitration proceeding went, and when it looked like she was losing, then she raises the argument that it's unconscionable to make me arbitrate. That's another way that we could evaluate the facts. Well, I think the correct way to look is she tried to fight the unconscionable elements and create a fair arbitration proceeding. She failed. At that point, she had nothing left but to go to court. She tried to comply with the contract as much as possible, and it's just, you know, she was thwarted. When she was thwarted, she was left with no option but to go to court because she couldn't serve her claim. Counsel, if I remember correctly, the franchise agreement contained a choice of law provision selecting Massachusetts law as governing the contract. If my memory is correct on that point, what effect does that choice of law provision have to our analysis? None, because nobody has disputed that California contract law applies. Even though the contract says it doesn't. Melkoops has never asserted that Massachusetts law applies. So, I mean, the case would argue in the district court and before the panel as though California law applied, and that's how the panel decided it. Well, I understand that's how the panel decided it, and we're sort of starting over from there. But if the parties ignore it, are we supposed to ignore it also? Is that what you're saying? I mean, to the extent that it's an argument that either party could raise, they waived it. I mean, this would be a waiver. Both parties perceived it as though there were no choice of law issue and California governs. Since it's not a matter of dispute, there's nothing to dispute. So it's essentially like an amendment to the contract, the parties have agreed. And the parties have agreed, both, not just one, but both. On the venue, could I ask a fact question there? You said that Ms. Negraffa tried to craft, in effect, by going through the process, a conscionable arbitration provision. There was some of these hearings took place in Los Angeles, did they not? What happened on venue, then, that turned it into an unconscionable agreement under the venue provision? Well, what happened was the arbitration, Malkoops filed against her in Los Angeles. She contested that venue from the outset, requesting one that was more accessible to her. And while that dispute was playing out, AAA transferred the case to Boston. And so she contested the venue where the case was from day one, and AAA resolved it by sending it even further away. But to bring the Court back to the question of who decides all this, the court or the This is an appropriate question for the Court, because all of the unconscionability allegations that we're talking about here pertain to the arbitration clause. Well, zero in on the prima or prima case language, if you will, because I'm not quite sure I understand your argument, which, at least as I heard it, was that our decision was contrary to prima pena. Some of us thought we were applying prima pena. Well, the key language in the prima pena decision, it appears on page 404 of the decision, where the Court holds that once you separate out the arbitration clause, a Federal court may consider only issues relating to the making and performance of the agreement to arbitrate. That's exactly what the unconscionability argument is here. All of the elements of our unconscionability argument, all of the elements of substantive unconscionability, and all of the elements of procedural unconscionability relate to the arbitration clause. What would that be? Just to clarify that, because I think I was confused on the point Judge O'Scanlan was making, too, it seems under California law that under the procedural prong, the – if it is a contract of adhesion, that essentially goes to the entirety of the contract. So at least under California law, on the first prong, the entirety of the contract is being deemed unconscionable. Is it your argument that you can take as a subset of that, single out one of the clauses of the contract without necessarily calling into question the conscionability on a substantive basis of the balance of the contract? It's not only that a court can, but the prima pena says you must, that you treat it as two separate contracts. When you have the allegation of adhesion, the question for the court is, does it apply to the arbitration clause? If it does, it's for a court to decide, regardless of its – whether it's descriptively true of other provisions. Well, let me – let me ask Judge Fischer's question basically is, if you have a contract that procedurally is a contract of adhesion, it's a form contract that you get handed and you really don't have any choice in bargaining over it, and it has one clause that, in addition, is substantively unconscionable, does that invalidate the entire contract, or does it only invalidate the clause that is substantively unconscionable? The latter. It only invalidates the clause that is substantively unconscionable because under California contract law in the Armendariz decision and subsequent decisions, it's very clear that both procedural and substantive unconscionability are necessary. So, in fact, the only provision of the contract here that's alleged to be unconscionable, satisfying both elements, is the arbitration clause. That makes it an easy case under prima pena. That's true, but let's say you are going to attack another provision of the contract. You wouldn't then have to go back and re-litigate the question of whether or not the contract as a whole is procedurally unconscionable, whether it's a contract of adhesion. So if there were some other clause in there that you're now going to litigate about, you already would have a determination of that this is a contract of adhesion, a determination that would apply equally to the arbitration clause and to every other clause in the contract. This is an undifferentiated determination. So the first step towards invalidating other provisions will already have been taken and can't be undone. It depends on how it's binding on the parties, doesn't it? It's a regis de carta. Well, the Court, in determining the arbitrability issue, can certainly limit its focus and say that we find that the arbitration clause is a standard form contract that was presented without an opportunity to negotiate. And it doesn't have to say anymore. But when there's no argument that is specific to the clause, when all the arguments as to adhesion apply to the contract as a whole, then the determination that the arbitration clause is a contract of adhesion implicates the contract as a whole. You know, therein lies the problem. You essentially, what you're doing is having a court making a decision which is part of the decision of what the arbitrator must do, which is to, in construing other clauses of the contract, it goes part of the way towards a finding of that other clauses of the contract are also invalid. Well, I mean, certainly the Court can prevent that by looking only at the arbitration clause, but to the extent that if the Court's ruling does have implication, perhaps the answer is that in making that determination, you have to bring only arguments specific to the arbitration clause, that in deciding whether something is a contract of adhesion, arguments that pertain to the contract as a whole simply can't be construed by the Court. Or it could be that you, if you bring a challenge to one clause as being substantively unconscionable, as well as your procedural challenge, that if you fail to bring in that case any challenge of substantive unconscionability to the other clauses, I'm sure someone would find a way to say you had waived them, or that you had failed to assert them when you had to do it. So you might not have a practical problem, and you might be able to do, I mean, there's so many contracts, or contracts of adhesion, and you don't normally, I would think, invalidate the entire contract just because you find a clause that is unconscionable in it. And in fact, in the situation where a court finds that the arbitration clause is adhesive and substantively unconscionable, nothing is taken away from the arbitrator because the arbitrator doesn't get the case. The arbitrator only gets the case if the clause is not substantively unconscionable. And at that point, the challenge is to the other clauses. Kennedy, but you could have a determination that the arbitration clause is adhesive, but that the arbitration clause is not substantively unconscionable. So you go into the arbitration with a determination that the contract is adhesive, which is part of what the arbitrator would have to determine in constituting other clauses. You've decided an issue that is in the arbitrator's province. I don't think you can avoid it. Well, I mean, the arbitrator would still have the substantive unconscionability argument, which would be necessary for granting any kind of relief. Of course. So the arbitrator isn't removed. Of course. But nevertheless, you will have taken away one issue that would be that clearly belongs to the arbitrator. In making this determination, unless you said that in deciding whether an arbitration clause is a contract of adhesion, you only consider arguments that go specifically to the arbitration clause and don't apply to the contract as a whole. And since Prima Pint says that's all a court can do, and if the court finds that an arbitration clause is not valid, Prima Pint says the court can't decide anything else. And so it would seem as though the adhesion determination for the rest of the contract would also still be open. The party would be free to introduce evidence to say, you know, the rest of the contract is different. They're different. There was an opportunity to negotiate these other provisions, and the arbitrator wouldn't be foreclosed from ruling on that because that question wasn't properly before the court under Prima Pint's severability. But you don't have any evidence in this case as to unconscionability with regard to the negotiations as to any part of the contract, do you? I mean, isn't it essentially they presented her with the contract and she signed it, and it was only when they sought to arbitrate that she raised it? Well, I mean, the evidence is that she said that she had no opportunity for negotiation. When in Ms. Negrempa's affidavit, in describing the contract formation process, she described several questions she raised about provisions, and the answers were basically, you know, trust us, it will work out. There was never actually any negotiation. When we alleged that it was a non-negotiable take-it-or-leave-it contract, that wasn't disputed, and the district court found that it wasn't disputed. So it's not just that the district court passed on the issue. It found that it wasn't in dispute, that there was agreement on all sides. Was there any question raised by her with regard to the arbitration? Not in the record, no. But the district court found that the question of adhesion was not in dispute. And so the under California law, the substantive element of unconscionability would be found based on that alone. Now, in getting back to the who decides question, it's not just that the panel's decision was contrary to PrimaPaint, but in departing from PrimaPaint, it's created a circumstance where that leads to unfair and irrational results. What the ---- Scalia, before you leave PrimaPaint, what's your response to the interpretations of other circuits, like the Fifth Circuit in Rojas, the Second Circuit in JLM, the Sixth Circuit in Berger, which have all interpreted Prima as placing the initial determination in the arbitrator? Well, the way those circuits characterize the arguments, it makes them sound different from the arguments here. In the JLM case, the Second Circuit said there's no indication that the arbitration clause itself is unconscionable or oppressive. Here, there's every indication that that's the case. All of Ms. Negrempa's arguments apply to the arbitration clause. Based on what the Second Circuit said there, it looks like it was looking at a different type of argument. Likewise, the Fifth Circuit in the Rojas case said that the claim of unconscionability is not an attack on the arbitration clause itself. Here, again, all of the elements go to the arbitration clause. So it looks like they're just different types of arguments that those courts were deciding. And based on what we have here, where every element of unconscionability applies to the arbitration clause, this clearly has to be a case for the Court to decide. Now, in distinguishing precedent, the panel basically said the other cases where the Court has decided this question because there was a single clause contract with just the arbitration clause, that's okay for the Court to decide. The only difference between those cases, like Circuit City and this one, is here there are more nonnegotiable provisions. Prima Paint says that's irrelevant, and to the extent that it matters, it shouldn't weigh against somebody challenging a clause. So is your – are you conceding that the remaining provisions of the contract are not unconscionable? We – that's not before the Court on an arbitrability determination. I see that my time is up, and so I'll reserve the balance for rebuttal. You've had a little extra, so we'll give the same to the other side. Thank you, may it please the Court. I'm Glenn Plattner, representing the appellee, Mail Cubes. And I would contend that there is only one issue here to be decided, and that issue is whether the district court's decision to dismiss Mr. Grumpa's complaint was correct, given that there was a mandatory arbitration provision in the franchise agreement. Are you waiving the claim of waiver? On waiver? Yes. Are you waiving your claim of waiver? No. No. You just said there was only one issue to be decided. No. Well, the decision to dismiss was correct on alternative grounds. So the issue was not whether the court's – district court's reasoning was the only basis. The district court didn't rule on waiver, finding it moot. The only issue is whether you should have won or lost, you mean. Correct. In reviewing the district court's decision, that really is the only issue, is whether the court – the underlying case filed by Mr. Grumpa should have been dismissed because it had to be arbitrated. On the issue of waiver – Can I ask you something? Certainly. I've been curious, since nobody raised the argument ever about who should be the decision-maker, how did that come up in the first place? And didn't everybody waive it? No, it was raised. But we did raise, in our initial briefs, the Arriaga case and the other cases that said the issue of contract of adhesion should be decided by the arbitrator. And contrary to what counsel said, the district court did not decide that this was a contract of adhesion. The district court, citing Prima Paine, deferred that issue to the arbitrator and instead ruled on substantive unconscionability. That's not really exactly what it said. What it said is that the question of whether it was a contract of adhesion is not dispositive to its ruling on the motion to compel. Correct. So it didn't really decide it. No, I agree it didn't decide it. It didn't say it was leaving it to the arbitrator. Well, it did. In the decision, it decided that that was an issue. And I could find the exact quote, but I believe in the district court's decision, it does say that that issue is one for the arbitrator to decide. But it was moot because the court found, since there are two elements, procedural and substantive unconscionability, and the court found that it was not substantively unconscionable, it dismissed the case. But it wouldn't reach that under California law, since that's step two of a unconscionability analysis, unless it assumed, for purposes of its decision, that it was procedurally unconscionable, at least with respect to the arbitration clause. Well, there's no indication in the opinion that the court assumed that it was procedurally unconscionable. Well, it wouldn't make any sense to get to the substantive point if it wasn't procedurally unconscionable in the first instance. It's a two-step process, and sort of like qualified immunity, you can, or used to be, anyway, you can bump over to the no prejudice or not clearly established and assume the constitutional violation. So, unlike Judge Wardlow, I don't, it seems that it doesn't make any sense to say that the court was implicitly finding that procedural unconscionability would be for the district court to decide that one of the arbitration provisos was indeed substantively unconscionable. Wouldn't it then have had to go, as a court, and decide the procedural issue? The court, well, the court didn't find anything was substantively unconscionable. Well, I know it didn't, but I'm trying to wrestle with your notion that somehow the district court implicitly deferred the procedural unconscionability to the arbitrator. I don't see how it could do so. I think it expressly did so. And what I believe the court's ---- I'm just characterizing what the district court actually said at page 3054. What it cited here is what it was saying is that, of course, when you're considering whether the arbitration clause in the agreement is unconscionable, which is actually what I think the plaintiff did say, that when you're considering whether the arbitration clause itself is unconscionable, you have to first consider whether it's a constitutional contract and, therefore, not precisely clear on this point, but, therefore, it's procedurally unconscionable. I don't believe the district court's decision viewed it as that. I mean, I have to say the district court did not say that whether or not the contract can be characterized as a contract of adhesion and whether such contracts are procedurally unconscionable by nature are not dispositive issues for the notion of the law. In order for the court to strike the arbitration provision, it must find the provision is unconscionable for the court to strike the arbitration provision. It must find the provision is unconscionable on both procedural and substantive grounds, and plaintiff fails to support her charge of substantive unconscionability. And, in fact, if your theory were correct, the whole arbitration clause would have been prohibited from getting to the procedural grounds, right? So that's what the court was not deciding, not referring. There's not a reference in there that I can see. It just wasn't deciding the question. And I believe that's what my initial comment was, that I had heard counsel to say that the court had decided that the issue of whether it was a contract of adhesion was not in dispute, meaning that it had found that it was a contract of adhesion. Why does that matter to the outcome for you, if you agree with the district court that there's no substantive unconscionability? It doesn't. I mean, I believe there are three bases why the decision was correct. One of them is the express finding that there was no substantive unconscionability based on the findings of fact which the district court made. The second is waiver. The second is waiver. And the third is the decision by the original panel in the Mail Coops case that the issue of whether it is procedurally unconscionable as a contract of adhesion is to be decided by the arbitrator. And because they did not raise that issue in arbitration, the case was properly dismissed. When did that issue first come up, the issue of whether the procedural unconscionability should be decided by the arbitrator? To a large extent, it came up during oral argument on the original appeal. I mean, there were mentions of it in the briefing, but the main focus of our briefs and I believe of Ms. Negrompa's briefs were whether the decision on substantive unconscionability was correct. Do you agree with opposing counsel that we are to look to California law, notwithstanding the provision of the franchise agreement? I think, yes, for purposes of this case. I'm not sure that there's any distinction in the laws of the two states with both. Governing law provision is a little more complex than that. It says that the agreement shall be deemed to have been made in the State of Massachusetts, shall become valid when executed and accepted by Mail Coop, and shall be governed and constituted in accordance with the laws of the State, provided, however, that any portion of the law which requires enforcement in any other State and which is enforceable under the laws of such other States, but not of Massachusetts, shall be constituted and enforced according to the laws of such other States. So it's not an ambiguous – it doesn't make Massachusetts law unambiguous applicable to everything. Correct. Does it matter if you both agree that you argued it under California law, you're presenting it under California law? Does it matter what the contract says? I'm not sure if there's any difference in Massachusetts law. I don't care whether there's any difference. I said, isn't this case here under California law, because that's the way you presented it to the district court, that's the way you presented it to us, so does it matter what Massachusetts law is? No, I don't think it does. That's fine. So let's start with Prima Paint to begin with. Let's take the issues one at a time. Prima Paint was a case in which there was a claim of fraud in the inducements which made the contract voidable, not void ab initio, right? Why do you think it's – why do you think Prima Paint should be extended to void contracts? And let me explain why my theory on that, or at least what it appears to me to be the theory of Prima Paint.  If you have a void or unenforceable contract, it doesn't follow that the arbitration clause is therefore not void or enforceable. The difference in Prima Paint was, and they were considering, a voidable contract which is presumed valid but may be voided perhaps at the election of a party. So why does the Prima Paint analysis apply here at all? Because the claim is that this is unenforceable and void void under California law, and that's the way California law treats unconscionability. How can you have a contract that is completely void under State law but enforceable by an arbitrator under Federal law? I'm not sure they've argued that the contract isn't completely void under State law other than in their fraud in the inducement claim, which is directly what Prima Paint held, that if it's a claim of fraud in the inducement, the arbitrator decides it. No, the question is unconscionability, because California treats that as a species of void contracts, not voidable. But under this – I mean, just on the general theory of Prima Paint, you'd have to agree that if we're talking about a void contract for whatever reason, then Prima Paint wouldn't apply because you have no agreement to arbitrate in the first instance, right? Well, if the entire contract was void, perhaps that's correct. Can I get your view of California law? My understanding of California law is that there's a two-step process, that a contract of adhesion is presumptively or is the equivalent of unconscionable from a procedural standpoint, but that doesn't end the inquiry. Then you have to take the next step and determine whether it's substantively unconscionable. So you can have lots of contracts of adhesion, but unless there's something wrong with the substantive provision in question, that doesn't make any difference. And labeling it unconscionable may be pejorative, but legally insignificant unless you tie it up to step two. My understanding of what the plaintiff in this case, Rampa, is arguing is that, yes, it's a contract of adhesion. That doesn't mean the whole contract is void. What it means is that, with respect to the next step, substantive unconscionability, the arbitration provision is unconscionable because of the specific provision with respect to venue and costs. I think we can, nobody seems to be pressing very hard that the AAA is a legal organization. So it's a tough study we needn't worry so much. The, isn't that what this case is about? So that, so why doesn't PrimaPaint fit comfortably, this case fit comfortably under PrimaPaint? All that's really at issue here, as a matter of California law, is whether a provision in a contract of adhesion, a provision in a contract of adhesion, is substantively unconscionable. And therefore, that provision, forget the rest of the contract, that provision is unenforceable. What's wrong with that? PrimaPaint says that in its own terms. All that the Federal Court has jurisdiction to look at under the Federal Arbitration Act is whether the arbitrability clause is enforceable or not. I think it does fit, and I believe that's what the district court did. Well. The district court looked at that issue and found it was not substantively unconscionable, and there was no basis. But you would defend the outcome in this case solely on the basis that, yes, the court, the district court, had the jurisdiction, authority to adjudicate whether or not the arbitration clause was enforceable. That's a judicially determinable action, but that it was correct on its substantive unconscionability provision, correct that it was not substantively unconscionable, either as to venue or cost. That's your position? Well, yes. The only thing I would differ with is I wouldn't defend it solely on that basis. I think the waiver argument is very, very strong. Well, I understand. Okay. I understand. But just to narrow it down, that in terms of PrimaPaint, you're not arguing that PrimaPaint precluded the district court from reaching the merits of the substantive unconscionability of the arbitration provision? Correct. But I'm not sure if one step has to go before the other. Well. So in the district courts, it ruled on substantive unconscionability, but I think it's also proper, and many of the other circuits following PrimaPaint have found that if there's an attack on the entire contract, and that's what they did, counsel said their procedural unconscionability arguments only went to the arbitration provision. But what is your position about this case? I thought I understood it a minute ago. Do you agree that the district court was correct in deciding the question of whether the arbitration clause on the merits was unconscionable and ruling in your favor? Was it right for the district court to rule in your favor, or should it not have ruled on that question? I think it was perfectly acceptable for it to rule on substantive unconscionability. Okay. Well, then it did have the jurisdiction to rule on substantive unconscionability. It did not have to refer that issue to the arbitrator. It did not have to rule to refer substantive unconscionability to the arbitrator, but I don't believe the original panel's decision said it did. Suppose it had ruled against you on substantive arbitrability. Would that have been the end of the case, or would it be referring something to the arbitrator? The procedural unconscionability issue, which the district court did not rule on, would have to then be ruled on, and I believe under PrimaPaint and the circuit that followed it, because that went to the entire contract and not to the arbitration clause, that is ruled on by the arbitrator. And what would happen then to the case if you had a ruling that it was substantively unconscionable, the arbitration clause, and you now then sent it to an arbitrator to decide whether it was procedurally unconscionable, then what would happen? The meaning, the substantive ruling would have no practical effect if the arbitrator then decided it was procedurally all right? Well, I think it certainly would have a practical effect. I imagine if that were what happened in this case, there would be a motion before the arbitrator on that issue. There wouldn't be a full-blown hearing or trial of the case. There would be a pre-hearing motion deciding that. So it would be briefed and that would be a very odd way to proceed. All right. That's fine. Well, in terms of procedure, I mean, California is a little bit different from the approach in other states, because it says there must be, of course, substantive and procedural unconscionability, but they need not be present in the same degree. I think that's the phrase used by the California Supreme Court. So the Supreme Court of California is analyzing this as sort of an intertwined issue. If I understand what the theory was, I guess, of the panel is that if there's a claim of a contract of adhesion, which they only argue goes to one clause, but might implicate the other parts of the contract, then the whole thing has to go to arbitration. If that's true, doesn't that emasculate from a Pence holding that the other issues, the ones relating to arbitration, have to stay with the district court, because you'd never reach it? I don't think so. And they didn't argue that the contract of adhesion only went to one clause. That's what counsel said today, but if you look at what they actually argued before the district court, which is in the record on page 84. But how do you say that there's a contract of adhesion without saying the whole contract is one of adhesion? I mean, that's a right? Right. I mean, they're saying their argument, as I understand it, is that the arbitration clause is a contract, was presented as a contract of adhesion. And what you're saying is, well, yeah, but it's part of a contract of adhesion and, therefore, goes to the whole contract. But their real argument is a little more narrow than that. They're not arguing about anything else. They're arguing about the arbitration clause. So it doesn't make more sense that people like California law to say that's an issue for the court. Then you don't get into this awkward procedure where you have substantive aspects that's got one court, procedural by the arbitrator, and go back and forth for years. I don't think you go back and forth for years, but I'm not sure if it makes more sense. I think the finding in PrimaPaint was because it's an attack on the entire contract. You could have a clause in a contract be a clause of adhesion and not the whole contract. You say, look, we'll negotiate about space. We'll negotiate about time. We'll negotiate about the choice of law. We'll negotiate about any sort of things. But we will not negotiate about arbitration. That's just one thing we'll not touch. You could have a situation like that. Correct. And in this case, there was no negotiation or attempt to negotiate about arbitration. And the reason we know that is Ms. Negrempa said in her declaration that she didn't even know there was an arbitration provision in the contract, which, of course, was contrary to what she signed under oath in the franchise agreement, which said that she read the entire agreement and understood it and accepted all the provisions. So can I understand your theory, then, if you are correct that the court can reach substantive unconscionability, but the arbitrator, by nature of the contract of adhesion analysis, tends to go to the entirety of the contract, that what would happen? The person resisting arbitration would first have to exhaust her remedy before the arbitration, whether it's a contract of adhesion. That would be step one. And then, if the arbitrator says, yes, it's a contract of adhesion, then it would go to the court to decide, with that preliminary step exhausted, whether there was a proviso that the arbitration proviso itself was substantively unconscionable. So you'd have to go to arbitration and interrupt if there's a contract of adhesion and then go to the court? That's one possibility, but I don't believe that's the only possibility. I think as was done in this case, and as is done in many cases, the district court can knock it out of the box by finding there's no substantive unconscionability, because although it's a two-element process, I don't believe you have to decide one element before the other. Is there some reason that you are arguing that if you had lost on substantive arbitrability, that you would want this then to go to an arbitrator on procedural issues instead of letting the judge decide both those issues? I mean, it doesn't – as Judge Thomas said, it's a sliding test. You measure the two together. It sounds like one person is supposed to do it. Now, you've already agreed that the judge will decide substantive arbitrage – substantive unconscionability. Why shouldn't he also decide the procedural unconscionability? I think it – for sake of efficiency, it certainly makes sense to have the judge decide both. But under what PrimaPaint says, for a tax on the entire contract, that's not the way the rule works. And there could be a tax just on the arbitration provision, claiming it is procedurally unconscionable. He's attacking the arbitration clause, and in doing that, he's saying that the clause is in itself substantively unconscionable, and also it's part of a contract of adhesion. Now, it all depends on how you want to frame the issue, but if the issue is framed as an attack on the arbitration clause, what's wrong with the judge, since we all agree – not all up here, but you and I at least agree – that the judge can decide the substantive unconscionability question. Why shouldn't he also then decide procedural unconscionability? The only answer I have is because the PrimaPaint case says that a tax on the entire contract, such as claiming the entire contract is fraudulently induced, or – It all depends on how you label what they're doing. If you label it, they're attacking the arbitration clause, then he could do it. Correct. And that's what many of the districts following PrimaPaint and cited in the opinion in this case have found. Right. But that's when – if somebody's attacking the entire contract as adhesive and unconscionable for reasons other than the arbitration clause, that's a fairly easy case. But if one is just attacking – if a party is just attacking the arbitration clause and they say it's adhesive, and incidentally it happens that the – as part of the argument there, they show that the entire contract was adhesive, but they don't ask for the entire contract to be found as unconscionable, isn't that really just a very narrow attack that falls comfortably within PrimaPaint as an attack on the arbitration clause solely? In other words, you can't hijack PrimaPaint by saying, well, they said adhesion, therefore it must be the whole contract, and therefore PrimaPaint – that PrimaPaint means it all goes to the arbitrator. Isn't the more rational way to say, what are they really claiming? Is it just about the arbitration clause? PrimaPaint doesn't touch it. If it's just about the contract, then perhaps it does. Isn't that the more logical way to do it? I don't think that's what they've done here. I'm not asking what they've done. I'm just saying, isn't that – as a matter of theory, isn't that the way it works? And then we have to apply the theory to the facts of this case. They say they're just doing that. You say they aren't. And we have to decide that. And that's a separate question. But you don't disagree with me, do you, that if it's just an incidental attack on the contract that's incidental to the primary attack on the arbitration clause, there's no other clause involved at all, that that really falls comfortably within PrimaPaint? Yes. If they're only attacking and only talking about the arbitration clause. Yes. And if they're incidentally attacking it on the basis that it's an adhesive contract in general, that doesn't really attack the entire contract, does it? Because the Court is not asked to find the entire contract unconscionable, just the arbitration clause, right? I'm not sure that that's different than the fraud and the inducement issue in PrimaPaint. Well, doesn't it make sense that the Court should decide issues concerning whether or not it should go to arbitration? Not the disputes arising under the contract related to or the breach, but as to whether or not it should be to go to arbitration. Yes. The Court should decide that. Aren't you perfectly happy with the way the district court reached this decision? I mean, it seems this other issue has been injected in, but the district court didn't reach this issue. You didn't urge it, you know, very hard in the district court. And you're comfortable with the district court deciding the issues, aren't you? Yes. And the primary argument we made before the original panel was just that, that the district court's decision was correct and that the alternative basis for the district court, that the district court could have dismissed the case, was the waiver issue based upon the year of participation. This whole theory that the panel had, the panel made up? I don't know that the panel made it up, but the panel's questioning brought it out. But it didn't come from you? There was some discussion of it in the brief. It was not the public. And you're not disavowing it? I'm sorry. People were coughing. I didn't hear what you said. Well, all right. I'll forgive you. But your argument on the appeal was not that the district court erred in reaching the decision, was it? It was not. Could I ask you to address the substance part on the cost? There is a law in this circuit, and apparently in California, that suggests that the fees to get access to the arbitration panel are greater than the costs one would have to pay in court, that that is substantively unconscionable. I've learned today, maybe I've missed it, but in any event, the AAA bill that was sent would have caused the nagrampa, arguably, to pay more than might have been required to get access to a filing fee in a court. Why isn't that, then, per se, substantively unconscionable under the California federal law? Well, there's been no showing that the actual cost you would have incurred would have been more than the cost incurred. But what she argued, and again, I think it's important to look at what she argued in the district court, not what she later argued in the Ninth Circuit. In the district court, her argument was that the costs weren't disclosed. That was the sole argument that was made, and that can be found in the record on page 88, and that is the argument that the district court rejected by finding that the costs or the fact that there would be costs were clearly disclosed. Well, let me ask you, let's, okay, I take that point, but just structurally since arbitration agreements typically invoke the AAA or a private judging organization, which on their face are going to cost more than the filing fees than one would pay to get access to court, does this contract of arbitration provide for recovery of those fees, those costs, if the nagrampa, in this case, for example, were to be able to pay or to have prevailed in the arbitration? I believe costs are recoverable, attorneys' fees are not. But the other step on the cost issue, which, again, has not been established by the evidence presented, is that the cost of the arbitration, which turned out to be $4,000, they claimed $6,000 was billed, would have prohibited her from participating in the arbitration, and there's no evidence in the record to show that that would have prohibited her from participating. Well, the reason I was asking the question, it says the arbitration agreement of ER44 says, or whatever, it's got all these stamps on it, but in any event, it says the costs of arbitration shall be borne equally by mail coup and franchisee. But it's your reading that if the franchisee prevails, that the cost of arbitration to litigate would be recoverable by the franchisee? Well, that's based upon your reading back of that provision. So my question, then, is, assuming that we've got over all the hurdles of procedural, you know, unconscionability, why isn't this agreement on its face going to be unconscionable under Armendariz and other cases which suggest that if the franchisee or the person subjected to arbitration doesn't have to pay more than they would to get into court? Because the Armendariz and the cases that talk about that are employment or consumer cases where somebody is effectively being shut out from defending or prosecuting a statutory right, and there is no case that has been cited or that I know of where in a commercial franchise context the rule is just, is it more than it would be in court? I think if that were the case and you were just to look at filing fees, that would effectively wipe out commercial arbitration, because the actual filing fees, as opposed to the total cost of litigating, are probably almost always more in an arbitration context than the filing fee for court. And I know Mr. Stoddard wanted time reserved, and we're out. Are there any further questions? Well, it doesn't look like the AIA is in tremendous jeopardy at the moment. They're out. There don't appear to be any questions. Okay. Thank you. If you can be very brief. And I neglected to point out that Judge Proulx is on the phone. Yes, I'm here. On the question of waiver, I'd just like to point out that Ms. Negrempa filed her court action as soon as AAA set the venue in Boston. She fought for an accessible venue. As soon as she didn't get it, she filed the action in court. Boston is not accessible? No. It's a far off right. It's $300. $300 on access to Boston. People commute to Boston weekly for jobs. It requires her to commute to Boston to go away from her job, just like in the Bolter case dealing with where a California court of appearance issues. When you're in court, you can't be at your job anyway. I mean, if you have to be in a proceeding, if you're being caught, you know, that's the way it is. Whether it's in town or whether it's it's so what's so special about Boston? This is this is not Bombay. It's not. It's not Rio de Janeiro. It requires extra time. It requires extra costs. But how much time and costs in relation to the I mean, this is a business relationship involving hundreds of thousands of dollars. This is not a consumer credit card claim. Why? You know, she does business with a company that's headquartered in Massachusetts. Why can't you expect that every so often she'd have to travel there and, you know, not terribly great expense? And, you know, people do that all the time. Well, you were talking about the waiver request. And then the point is that in the waiver, she brought the court action as soon as the venue was set on the venue. It really isn't in front of us because the district court took action and indicated that it could change the venue if necessary. And our case, I mean, that's the district court didn't change venue. It basically said that it was going to happen in Massachusetts. Well, you said an accessible is what I was taking issue with. You said, you know, it moved it to an accessible location. You just didn't strike me that Boston was an accessible. I was just in Boston. And I got back pretty quick. And that goes to the unconscionability argument for which there's substantial case support in both California and this Court's decision in the Tickner case where one person, hotel owner, was required to go from Montana to Maryland at Tickner v. Choice Hotels, and the Court found that that franchise arbitration clause was both procedurally and substantively unconscionable based on arguments very similar to this one. The final points on the other side of the argument are that there's substantial case support in both California and this Court's decision in the Tickner case where one person, hotel owner, was required to go from Montana to Maryland at Tickner v. Choice Hotels, and the Court found that that franchise arbitration clause was both  one. And the final point on the other side of the argument is that there's substantial case support in both California and this Court's decision in the Tickner case where one person, hotel owner, was required to go from Montana to Maryland at Tickner v. Choice Hotels, and the Court found that there's substantial case support in both  water district v. E.F. Hutton. That type of argument that goes to the validity of the arbitration clause and has spillover effects to other parts is for a court to decide. There, the allegation was signature. Ginsburg. What do you want us to do? What's the bottom line you want to do? Two things. The Court should hold that, should reverse the panel's determination and hold that the unconscionability. We're re-hearing the appeal. We're re-hearing the whole appeal. So. And so the two things the Court should do are, one, hold that the question of unconscionability of the arbitration clause is for a court to decide, and, two, hold that the arbitration clause is unconscionable under well-established California law, finding that adhesive contracts between companies and individuals that impose costs in excess of court costs and require long-distance venue travel are unconscionable. There's California law on all these points, and there's every reason for the Court to decide that very question and hold not just that the panel was wrong in punting this to the arbitrator, but that the district court was wrong in upholding the arbitration clause. Thank you. If there are no other questions. Thank you. Thank you, Ken. It was just argued. It's submitted.
judges: Schroeder, Reinhardt, Kozinski, O'scannlain, Thomas, Graber, Wardlaw, Fisher, Gould, Tallman, Clifton